UNITED STATES DISTRICT COURT
(SOUTHERN DISTRICT OF MARYLAND)
(GREENBELT)

| | |
|---|---|
| SONIA TAYLOR-WATSON<br>2 RIVERWATCH LANE<br>INDIAN HEAD, MD 20640 | :<br>:<br>: |
| Plaintiff, | : |
| -vs- | :     CIVIL ACTION NO._____ |
| LEGAL RISK SERVICES, INC. (d/b/a<br>DISCOUNT LEGAL PLAN)<br>760 CUMBERLAND STREET<br>LEBANON, PA  17042 | :<br>:<br>:<br>: |
|    Serve: Vincent Smith, President<br>   & Sheila Smith<br>   9 St. Lucia Court<br>   Sinking Springs, PA 19608 | :<br>:<br>: |
| AND | : |
| VINCENT SMITH (individual capacity)<br>9 LUCIA COURT<br>SINKING SPRING, PA 19608 | :<br>:<br>: |
| Defendants. | : |

**COMPLAINT**

**Violations of 29 U.S.C. §216, (Federal Labor Standards Act) & Md. Code, Lab. & Empl. § 3-501 *et. seq*. (Maryland Wage Payment & Collection Law)**

1. Plaintiff, Sonia Taylor-Watson ("Plaintiff" or "Taylor") brings this civil action to recover unpaid wages against Legal Risk Services, Inc. d/b/a Discount Legal Plan ("LRS") and its owner, Vincent Smith, in his individual capacity (collectively "Defendants"), alleging that they failed to pay her wages for work she performed as an employee in accordance with the Maryland Wage Payment and Collection Law ("MWPCL"), codified under MD Lab. & Emp.

1

Code § 3-507.2, and the Federal Labor Standards Act ("FLSA"), codified under 29 U.S.C. 201, *et seq.*, while employed with LRS.

## JURISDICTION

2.  Plaintiff is asserting causes of action under the MWPCL and the FLSA. This Court has jurisdiction over the subject matter of this civil action pursuant to 29 U.S.C. § 216 of the FLSA.  This Court has subject matter jurisdiction under 28 U.S.C. §133 because Plaintiff's claims involve a federal question and the Court has pendant jurisdiction over the Plaintiff's Maryland law claims under 28 U.S.C. §1367.

## VENUE

3.  Venue is proper in this judicial district under Federal Rules of Procedure (FRCP) 4(k)(1) and 4(k)(2) and Maryland Courts & Judicial Proceedings §6-103 (Maryland long arm statute) as the Defendants have substantial contacts in the State of Maryland, have provided equipment to Plaintiff so that she could do her job in the state of Maryland and have otherwise availed themselves of the laws of the State of Maryland.

## PARTIES

4.  Plaintiff is an adult resident and citizen of the State of Maryland.  During the period that gives rise to this litigation, she was employed as the director of marketing for LRS.  She was responsible for expanding the LRS brand throughout the United States through the use of social and digital media.  She was hired by LRS on or about October 16, 2020 to work remotely from her home in Indian Head, Maryland.  She was terminated by Defendant Vincent Smith on June 2, 2023 for reasons unknown to her.

5.  LRS is a C-Corporation licensed, organized and operated under the laws of Pennsylvania. It is headquartered in Lebanon, Pennsylvania.  It operates a nationwide referral

network of criminal, family and immigration lawyers throughout the United States who are hired based upon the legal needs of its customers. Customers pay an annual subscription or membership fee in order to be eligible for legal services in the state upon which the legal assistance is needed. LRS also provides financing to consumers who need assistance in obtaining an attorney as well as do-it-yourself legal assistance. It employs nearly thirty-five to forty employees, many of whom work remotely from home in various states within the United States including but not limited to the State of Maryland. At all times relevant to this Complaint, LRS employed Plaintiff within the meaning of the MWPCL and FLSA because it (1) treated her as an employee; (2) set her rate and manner of pay; (3) paid her wages; (4) supervised her; (5) hired her; (6) had the authority to terminate her employment and ultimately did so; and (7) maintained her employment records at all times.

      6.     Vincent Smith ("Smith") is the President and Chief Executive Officer of LRS. He is an employer of Plaintiff within the meaning of the MWPCL because he: (1) has operational control over LRS and is significantly involved in its operations; (2) directly controlled the terms and conditions of Plaintiff's employment, including her work schedule, her compensation and pay, and did in fact set the terms and conditions of her employment; (3) had the authority to hire and fire Plaintiff and did in fact hire and fire her; (4) had functional control over LRS' corporate funds, which were used to pay Plaintiff, and he had the authority to allocate funds; (5) had the authority to set Plaintiff's rates and manner of pay and did set the Plaintiff's rate and manner of pay and authorized payment of Plaintiff's wages; (6) had knowledge of the fact that Plaintiff was not paid her wages and refused to do so even after she was terminated; and (7) maintained her employment records.

## FACTUAL BACKGROUND

7. Plaintiff was interviewed and hired directly by Smith on or about October 16, 2020 to be the director of marketing at LRS.

8. LRS paid her an annual base salary of $90,461.54. Plaintiff's regular hourly rate for the purposes of the MWPCL and the FLRA was $43.49 per hour. *See* 29 C.F.R. §778.113.

9. Plaintiff was paid a bi-weekly salary of $3,769.23 that was directly deposited into her bank account by LRS Operations Manager, Albert Garcia.

10. Beginning with her pay period ending on July 8, 2022, LRS started to delay depositing monies into Plaintiff's bank account. These delays continued every pay period until April 14, 2023 when LRS stopped paying Plaintiff altogether despite her still being employed and working full time.

11. Defendants' delay in payment and actual failure to pay Plaintiff her earned bi-weekly salary altogether can be illustrated by the following timeline:

| Pay Date | Date Check was actually deposited by LRS |
|---|---|
| July 8, 2022 | July 13, 2022                (5 days late) |
| August 5, 2022 | August 8, 2022                (3 days late) |
| September 30, 2022 | October 13, 2022                (14 days late) |
| October 14, 2022 | October 14, 2022                (Paid on time) |
| November 11, 2022 | November 14, 2022                (3 days late) |
| December 9, 2022 | December 13, 2022                (4 days late) |
| January 6, 2023 | January 11, 2023                (5 days late) |
| January 27, 2023 | February 22, 2023                (26 days late) |
| February 17, 2023 | March 9, 2023                (20 days late) |

| | | |
|---|---|---|
| March 3, 2023 | March 22, 2023 | (19 days late) |
| March 17, 2023 | April 11, 2023 | (25 days late) |
| March 31, 2023 | April 24, 2023 | (24 days late) |
| April 14, 2023 | May 2, 2023 | (12 days late) |
| April 28, 2023 | June 22, 2023   (55 days late)  **(LRS deposited $2,744.36 into Plaintiff's bank account) leaving $1,024.56 of the bi-weekly balance owed unpaid.** | |
| May 12, 2023 | **Wages Never Paid** | |
| May 26, 2023 | **Wages Never Paid** | |
| Plaintiff terminated on June 2, 2023 | **Wages Never Paid** | |

**Illustration A**

12. Plaintiff's last date of official employment with LRS was June 2, 2023.

13. Her last scheduled pay period ended on June 9, 2023.

14. Defendants failed to pay Plaintiff her <u>entire</u> bi-weekly salary on her scheduled pay date over the course of the following four (4) pay periods: April 28. 2023, May 12, 2023, May 26, 2023 and June 9, 2023. **See Illustration A.**[1]

15. The total amount of base wages owed to Plaintiff by the time she was terminated is $12,332.56. (This amount excludes penalties for late payment of wages that are provided for under Maryland and Federal law).

16. Defendants failed to pay Plaintiff any of the wages it owed to her upon her termination.

---

[1] On June 22, 2023, LRS direct deposited $2,744.36 into Plaintiff's bank account making the total amount of base salary owed $12,332.56.

17. Defendants also failed to pay Plaintiff her bi-weekly salary and the total wages that was owed to her by the end of her last scheduled pay period.

18. On June 16, 2020, Plaintiff's counsel electronically mailed Defendants correspondence demanding that Defendants pay Plaintiff what is owed to her.  However, the Defendants ignored the correspondence.

19. Plaintiff reached out to the Defendants on her own to request that she be paid her total unpaid wages. Defendants ignored her as well.

20. Over the course of Plaintiff's employment tenure with Defendants, Defendants were more than 215 days late in depositing Plaintiff's wages directly into her bank account since July 8, 2022. *Id.*

21. At the time of filing this civil action, Defendants still have made no attempt to pay Plaintiff the wages it owes her.

22. The wages owed were never the subject of any legitimate dispute by Defendants.

### COUNT I
### Maryland Wage Payment and Collection Law, Md. Code, Lab. & Empl. § 3-501
### (Legal Risk Services d/b/a Discount Legal Plan and Vincent Smith)
### (Theft of Wages)

23. Plaintiff re-alleges and incorporates the allegations contained in the paragraphs herein.

24. At all times relevant to this Complaint, Plaintiff was an "employee" of the Defendants within the meaning of the MWPCL. *See* MD Lab. & Emp. Code § 3-501.

25. At all times relevant herein, Defendants were both "employers" of Plaintiff within the meaning of the MWPCL. *Id.*

26. At all times relevant herein, Plaintiff was an "employee" of the Defendants within the meaning of the MWPCL. *Id.*

27. At all times relevant to this Complaint, Plaintiff performed services for Defendants and Defendants were obligated to pay Plaintiff a bi-weekly salary for the work she performed on behalf of Defendants.

28. Defendants were more than two weeks late paying Plaintiff her bi-weekly salary over the course of six (6) scheduled pay periods. *See* **Illustration A**.

29. Additionally, beginning on April 28, 2023, Defendants failed to pay Plaintiff any of her earned bi-weekly salary despite Plaintiff working for the Defendants at least 40 hours per week up until her termination on June 2, 2023.

30. Defendants violated the MWPCL by delaying the payment of Plaintiff's salary beyond two weeks of its scheduled due date on six (6) different occasions.

31. Defendants also violated the MWPCL by withholding Plaintiff's wages from April 28, 2023 to June 2, 2023 – the date of her termination.

32. Thus, under the MWPCL, Plaintiff is entitled to her unpaid wages plus an additional three times that amount in liquidated damages.

33. The total amount of unpaid earned base wages owed to Plaintiff under the MWPCL is $12,332.56 [$3,769.23 x 3 incidents of wages not being paid in its entirety] plus $1,024.56 (reflecting the amount still due from LRS' June 22, 2023 direct deposit into Plaintiff's bank account). *Id.*

34. Under the MWPCL, Plaintiff is owed $49,330.24 in liquidated damages. [$12,332.56 x 4 [liquidated damage multiplier under the MWPCL]

35. Additionally, Plaintiff is owed an additional $73,995.36 in liquidated damages as a result of Defendants' consistent delays in payments that were made more than two weeks after her scheduled pay date (i.e., $12,332.56 x 6 (Six reflects the number of incidents when

Defendants paid Plaintiff her bi-weekly salary more than two weeks after the scheduled due date)). *See* **Illustration A;** *See also* § 507.2(a) and (b) regarding penalties under the MWPCL for delayed payment after two weeks.

36. Thus, the total amount recoverable by Plaintiff under the FLSA for Defendants' unlawful withholding **and** delayed payment of her bi-weekly salary is **$123,325.60** (i.e., $49,330.24 + $73,995.36) in addition to reasonable attorney's fees, costs and expenses incurred.

## COUNT II
### (Violation of Federal Labor Standards Act 29 U.S.C. § 216(b))
### (Legal Risk Services d/b/a Discount Legal Plan and Vincent Smith)
### (Theft of Wages)

37. Plaintiff re-alleges and incorporates allegations contained herein.

38. Plaintiff was engaged in commerce as defined by the FLSA in that she travelled to Defendant's headquarters in Lebanon, Pennsylvania from Indian Head, Maryland and performed work in Maryland that was directly related to the expansion of Defendants' corporate brand throughout the United States.

39. The Defendants violated the FLSA by knowingly and willfully withholding wages as well as delaying the payment of salary owed to Plaintiff once earned by Plaintiff.

40. The Defendants' actions were willful as defined by the FLSA and were not undertaken in good faith and therefore they are liable to Plaintiff for liquidated damages.

41. The Defendants are liable to Plaintiff under 29 U.S.C. § 216(b) of the FLSA for delaying the payment of wages to Plaintiff.

42. For each time that Plaintiff was paid her bi-weekly salary after the scheduled payment date, the Defendants are liable for an amount equal to the late payment in liquidated damages.

43. Because of Defendants delay in paying Plaintiff's salary on at least 13 occasions, Plaintiff is owed $7,538.46 (i.e., $3,769.23 x 2 (liquidated damage multiplier under the FLSA)) for each delayed payment under the FLSA. *See* **Illustration A.**

44. Thus, the total amount owed to Plaintiff due to Defendants' delayed payment of Plaintiff's bi-weekly salary is $95,672.98 (i.e., $7,359.46 x 13 delayed payments).

45. In addition to liquidated damages owed as a result of Defendants' delayed payment of Plaintiff's bi-weekly salary, Plaintiff is also entitled to liquidated damages due to Defendants' failure to pay her agreed upon bi-weekly salary since May 2, 2023.

46. The total amount of earned salary withheld from Plaintiff under the FLSA is $12,332.56.

47. Under the FLSA, Plaintiff is entitled to an equal amount unlawfully withheld in bi-weekly salary in liquidated damages.

48. Under the FLSA, Plaintiff is entitled to $12,332.56 in liquidated damages for Defendants' unlawful withholding of wages. ((i.e., $3,769.23 X 3 withheld wage payments) plus $1,024.56 which reflects the balance due from the direct deposit made by LRS to Plaintiff's bank account on June 22, 2023). *Id***.**

49. Thus, the total amount owed to Plaintiff under the FLSA for Defendants' unlawful withholding **and** delayed payment of her bi-weekly salary is **$108,005.54** [$95,672.98 + $12,332.56] in addition to reasonable attorney's fees, costs and expenses incurred.

## REMEDIES REQUESTED

**WHEREFORE**, Plaintiff respectfully request that this Court grant the following relief:

1. Grant judgment against Defendants, and each of them, in favor of Plaintiff in the amount of Plaintiff's unpaid wages plus an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b) of the Federal Labor Standards Act;

2. Grant judgment in favor of Plaintiff and against each Defendant in the amount of Plaintiff's respective unpaid wages and benefits, triple unpaid wages and benefits in liquidated damages; and reasonable attorneys' fees and costs pursuant to the Maryland Wage Payment and Collection Law;

3. Award Plaintiff liquidated and compensatory damages to the fullest extent permitted under Maryland and Federal law;

4. Award Plaintiff litigation costs, expenses and attorneys' fees to the fullest extent permitted under Maryland and Federal law;

5. Award Plaintiff prejudgment interest at the legal rate from the date of violations until judgment, and post judgment interest at the legal rate thereafter; and

6. Award such other relief as this Court deems just and proper.

    Respectfully submitted,

    JAY CRUMP, P.A.

    /s/ Jason C. Crump

    _____
    Jason C. Crump, Esq. #16309
    4200 Parliament Place, Suite 220
    Lanham, MD 20706
    Tel. (301) 925-2001
    Fax (301) 925-2540
    jcc@jaycrumpesq.com
    *Attorney for the Plaintiff*