# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## (SOUTHERN DIVISION)

| | | |
|---|---|---|
| SONIA TAYLOR WATSON, | * | |
| Plaintiff | * | |
| v. | * | Civil Case No. 8:23-CV-1936-AAQ |
| LEGAL RISK SERVICES, INC. *et al.*, | * | |
| Defendant. | * | |

## **MEMORANDUM OPINION AND ORDER**

This is a case concerning an employer's failure to properly pay an employee.  Plaintiff, Sonia Taylor Watson, brings this suit against her former employer, Legal Risk Service, Inc. d/b/a/ Discount Legal Plan ("LRS"), and its owner, Vincent Smith, seeking to recover unpaid wages.  She now moves for Default Judgment, ECF No. 18.  For the reasons explained below, the Court shall grant the Motion, in part.

## BACKGROUND

According to the Complaint, Plaintiff is a resident and citizen of Maryland.  ECF No. 1, at 2.  Defendants are Legal Risk Service, Inc. d/b/a/ Discount Legal Plan ("LRS") and its owner, Vincent Smith.  *Id.* at 1, 3.  LRS is headquartered in Lebanon, Pennsylvania and employs approximately thirty-five to forty people. *Id.* at 2-3.  The company "operates a nationwide referral network of criminal, family and immigration lawyers throughout the United States." *Id.*  It also provides financing services to individuals in need of legal assistance. *Id.* at 3.  Many of the company's employees work remotely in various states including Maryland. *Id.*  Mr. Smith is the President and Chief Executive Officer of LRS. *Id.*

Mr. Smith interviewed and then hired Plaintiff for the role of LRS' Director of Marketing in October 2020. *Id.* at 2, 4. In that role, she managed the company's branding and media. *Id.* at 2. LRS compensated Plaintiff with an annual base salary of $90,461.54, which amounts to an hourly rate of $43.49. *Id.* at 4. LRS paid Plaintiff's salary by direct deposit on a biweekly basis, approximately $3,769.23 per paycheck. *Id.*

LRS began deviating from this regular payment schedule starting in July 2022. *Id.* at 4. For the pay period ending on July 8, 2022, Plaintiff's salary deposit was five days late. *Id.* From that date until June 2023, each payment but one was delayed as reflected below:

| Scheduled Pay Date | Actual Payment Date | Days Late |
|---|---|---|
| July 8, 2022 | July 13, 2022 | 5 |
| August 5, 2022 | August 8, 2022 | 3 |
| September 30, 2022 | October 13, 2022 | 14 |
| October 14, 2022 | October 14, 2022 | 0 |
| November 11, 2022 | November 14, 2022 | 3 |
| December 9, 2022 | December 13, 2022 | 4 |
| January 6, 2023 | January 11, 2023 | 5 |
| January 27, 2023 | February 22, 2023 | 26 |
| February 17, 2023 | March 9, 2023 | 20 |
| March 3, 2023 | March 22, 2023 | 19 |
| March 17, 2023 | April 11, 2023 | 25 |
| March 31, 2023 | April 24, 2023 | 24 |
| April 14, 2023 | May 2, 2023 | 12 |
| April 28, 2023 | June 22, 2023 | 55 |

*Id.* at 4-5. For the pay period ending April 28, 2023, LRS deposited only $2,744.36 into Plaintiff's bank account, $1,024.56 short of her expected bi-weekly salary. *Id.* at 5. Then for the three following pay periods, LRS did not pay Plaintiff at all. *Id.* The relevant periods ended May 12, May 26, and June 2, 2023. *Id.* at 5. Mr. Smith terminated Plaintiff's employment on June 2, 2023. *Id.* at 2. On June 16, 2023, Plaintiff's counsel demanded that Defendants pay Plaintiff her missed wages. *Id.* at 6. Defendants failed to respond. *Id.*

On July 20, 2023, Plaintiff filed this lawsuit alleging violations of the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), based on Defendants' delayed and unmade payments. ECF No. 1, at 7-8. As relief, she seeks backpay for her unpaid wages ($12,332.56) and liquidated damages ($36,997.68). ECF No. 18, at 3-4.

On July 21, 2023, a summons was issued to both Defendants. ECF No. 5. At the end of August 2023, Plaintiff returned executed summonses showing that service had been executed on both Defendants. ECF No. 9 (service executed on Mr. Smith); ECF No. 11 (service executed on LRS). Mr. Smith's response to Plaintiff's Complaint was due on or before August 22, 2023; LRS' was due September 15, 2023. ECF Nos. 9, 11. Defendants failed to make an appearance or otherwise answer the Complaint.

On November 3, 2023, Plaintiff moved for a Clerk's Entry of Default against Defendants, ECF No. 16, and the Clerk entered an Order of Default against Defendants. ECF No. 19. Notice of the Clerk's Order was issued to both Defendants. ECF Nos. 20, 21. On November 8, 2023, Plaintiff moved for Default Judgment against Defendants in the amount of $49,329.93,[1] plus $18,939.50 in attorney's fees. ECF No. 18, at 5. In support, Plaintiff attached her own declaration, ECF No. 18-1, the timesheet of her counsel, ECF No. 18-3, and an affidavit from her counsel, ECF No. 18-4. Despite the Clerk's Entry of Default, neither Defendant has appeared or taken any action in the case.

---

[1] Plaintiff's Motion seeks $12,332.25 in back pay and $36,997.68 in enhanced damages, producing a total of $49,329.93. ECF No. 18, at 3-4. However, in her Conclusion, Plaintiff states that she seeks a total damages award of $36,997.68. *Id.* at 5. The Court interprets this as a typographical error and analyzes Plaintiff's Motion pursuant to the body of the brief.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 55(b) governs the entry of default judgments, which may be entered by the Clerk of the Court "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation," and the defendant is in default for failing to appear. Fed. R. Civ. P. 55(b)(1). The entry of default judgment is left to the discretion of the Court. *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). Although "the Fourth Circuit has a 'strong policy that cases be decided on the merits,'" *Disney Enters. v. Delane*, 446 F. Supp. 2d 402, 405 (D. Md. 2006) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), "default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Id.* (quoting *Lawbaugh*, 359 F. Supp. 2d at 421). Default judgment is proper where a defendant is unresponsive. *See Parl Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896-97 (4th Cir. 1987) (upholding a default judgment awarded where the defendant lost its summons and did not respond within the proper period); *Disney Enters.*, 446 F. Supp. 2d at 405-06 (finding appropriate the entry of default judgment where the defendant had been properly served with the complaint and did not respond, despite repeated attempts to contact him).

When considering a motion for default judgment, the Court takes as true all well-pled factual allegations in the complaint, other than those pertaining to damages. Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one related to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); *see also Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." (citation and internal quotation marks omitted)).

In the Fourth Circuit, district courts analyzing requests for default judgment have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are "well-pleaded." *See, e.g., Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972 at *2-3 (D. Md. Apr. 9, 2012*); United States v. Nazarian*, No. DKC 10-2962, 2011 WL 5149832 at *2-3 (D. Md. Oct. 27, 2011); *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544-45 (D. Md. 2011). Where a complaint offers only "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement," the allegations therein are not well-pled and, consistent with the Court's discretion to grant default judgment, relief based on those allegations should be denied. *Balt. Line Handling Co.*, 771 F. Supp. 2d at 544–45 (internal quotation marks omitted) ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

## DISCUSSION

The Court begins by addressing jurisdiction, then proceeds to assess liability and damages, ultimately granting Plaintiff's Motion.

## I.    Jurisdiction

The Court must first assess whether it has subject-matter jurisdiction over the claim. *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010) ("Courts have an independent obligation to determine whether subject-matter jurisdiction exists."). The Court has jurisdiction over Plaintiff's FLSA claim because it arises under federal law. *See* 28 U.S.C. § 1331. Plaintiff's MWPCL claim arises from the same common nucleus of facts, such that the two claims "form part of the same case or controversy" in a manner that allows this Court to exercise supplemental jurisdiction. 28 U.S.C. § 1367(a); *see Reed v. Code 3 Sec. & Prot. Servs., Inc.*, No. 09-CV-1162, 2009 WL 5177283, at *3

(D. Md. Dec. 18, 2009) (exercising supplemental jurisdiction over a MWPCL claim accompanying a FLSA claim).[2]

## II.    Liability

### A.    Count I—MWPCL

"The MWPCL requires an employer to pay its employees regularly while employed, and in full at the termination of employment." *Peters v. Early Healthcare Giver, Inc.*, 97 A.3d 621, 625 (Md. 2014) (citing Md. Code Ann., Lab. & Empl. §§ 3-502, 3-505).  The statute specifically "provides the employee with a private right of action to collect unpaid wages . . . [']after 2 weeks have elapsed from the date on which the employer is required to have paid the wages,'" whether that is a regular pay period or the date of termination. *Marshall v. Safeway Inc.*, 88 A.3d 735, 744 (Md. 2014) (quoting Md. Code Ann., Lab. & Empl. § 3-507.2(a)).  In other words, the MWPCL requires payments to be both on-time and in full. *Falaiye v. CCA Academic Res., LLC*, No. PX-16-2887, 2017 WL 4098740, at *4-5 (D. Md. Sept. 14, 2017).

To begin, the Court must assess whether "Plaintiff [has] demonstrate[d] the existence of an employment relationship between the parties," because it is a necessary precondition of a MWCPL claim. *Id.* at *5.  Courts in this district apply the economic-reality test to this inquiry. *Id.*  Under this test, courts consider six factors the U.S. Supreme Court identified in *United States v. Silk*, 331 U.S. 704 (1947), and the Fourth Circuit adopted in *Schultz v. Capital Intern. Sec., Inc.*, 466 F.3d 298, 304-05 (4th Cir. 2006):

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or

---

[2] The Court need not address whether venue is proper because "[a] defendant waives a venue objection by defaulting."  14D Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 3829 (4th ed. 2024) (citing *Comm. Cas. Ins. Co. v. Consol. Stone Co.*, 278 U.S. 177, 180-81 (1929)); *see Hoffman v. Blaski*, 363 U.S. 335, 343 (1960) (same).

his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Schultz*, 466 F.3d at 304-05.  The factors are "designed to capture the economic realities of the relationship between the worker and the putative employer," and "[n]o single factor is dispositive." *Schultz*, 466 F.3d at 305.  Rather, "all six are part of the totality of the circumstances presented." *McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 241 (4th Cir. 2016).  A plaintiff is not "strictly obligated to plead facts relevant to every factor of the *Silk/Schultz* test," but must plead facts sufficient to "raise his entitlement to relief . . . 'above the speculative level.'" *Acevedo v. McCalla*, No. MJM-22-1157, 2023 WL 1070436, at *5 (quoting *Twombly*, 550 U.S. at 555).

Plaintiff has met her burden as to both Defendants.  The Complaint alleges that LRS "(1) treated her as an employee; (2) set her rate and manner of pay; (3) paid her wages; (4) supervised her; (5) hired her; (6) had the authority to terminate her employment and ultimately did so; and (7) maintained her employment records at all times."  ECF No. 1, at 3.  In her role as Director of Marketing, Plaintiff managed the company's branding using social and digital media—a task requiring specialized knowledge and skill. *Id.* at 2.  Plaintiff performed this role for approximately two and one-half years, a level of permanence indicating an employment relationship. *Id.* at 4-5.  These allegations amply support the existence of an employee-employer relationship. *See Acevedo*, 2023 WL 1070436, at *5.

The same is true of individual Defendant Vincent Smith.   The economic-reality test also governs the inquiry of whether an individual is an employer pursuant to wage and hour laws. *See Gionfriddo v. Jason Zink, LLC*, 769 F. Supp. 2d 880, 890 (D. Md. 2011); *Guillen v. Armour Home Improvement, Inc.*, No. DLB 19-2317, 2023 WL 3819295, at *11-16 (D. Md. June 5, 2023).  Courts determine this specific relationship "by examining a number of factors—such as the person's job

description, his or her financial interest in the enterprise, and whether or not the individual exercises control over the employment relationship." *Gionfriddo*, 769 F. Supp. 2d at 890 (citing *Baystate Alt. Staffing v. Herman*, 163 F.3d 668, 675 (1st Cir. 1998). Plaintiff alleges that Mr. Smith

> (1) has operational control over LRS and is significantly involved in its operations; (2) directly controlled the terms and conditions of Plaintiff's employment, including her work schedule, her compensation and pay, and did in fact set the terms and conditions of her employment; (3) had the authority to hire and fire Plaintiff and did in fact hire and fire her; (4) had functional control over LRS' corporate funds, which were used to pay Plaintiff, and he had the authority to allocate funds; (5) had the authority to set Plaintiff's rates and manner of pay and did set the Plaintiff's rate and manner of pay and authorized payment of Plaintiff's wages; (6) had knowledge of the fact that Plaintiff was not paid her wages and refused to do so even after she was terminated; and (7) maintained her employment records.

ECF No. 1, at 3. Mr. Smith set Plaintiff's working conditions, including her schedule and pay. *Id.* He also had a strong financial interest in the business as an owner and as the controller of the corporate funds. *Id.* Such facts strongly support an employer relationship. *See Guillen*, 2023 WL 3819295, at *13; *Marroquin v. Canales*, 505 F. Supp. 2d 283, 298-99 (D. Md. 2007) (concluding that an individual defendant was not an employer because, among other things, she did not work at the entity, had no decision-making authority, and lacked access to the entity's funds). Thus, both Defendants were Plaintiff's employer.

Turning to the question of a MWPCL violation, the Court finds that Plaintiff adequately alleges that Defendants failed to comply with the law's requirements. Plaintiff alleges that Defendants violated the MWPCL by (1) delaying payment of her salary for more than two weeks beyond its scheduled due date on at least six occasions; and (2) withholding her wages from April 28, 2023, to June 2, 2023. ECF No. 1, at 7.

As discussed, the MWCPL requires that employers disburse payments at least once every two weeks or twice per month. Md. Code Ann., Lab. & Empl. § 3-502(a)(1). Defendants failed to comply with these requirements when they delayed Plaintiff's wage payments in the Spring of

2023 by 26, 20, 19, 25, 24, and 55 days.  ECF No. 1, at 4-5.  Plaintiff received only one paycheck

in January, February, and May 2023.  *Id.*  Defendants failed to pay Plaintiff her full wages for the

period ending on April 28, 2023, leaving $1,024.56 unpaid.  *Id.* at 5.  Finally, Defendants failed to

pay Plaintiff "all wages due upon [her] termination."  Md. Code Ann., Lab. & Empl. § 3-505.

Plaintiff worked full forty-hour weeks from April 2023 until her termination on June 2, 2023.  ECF

No. 1, at 5, 7.  She has yet to receive payment for the pay periods ending on May 12 and May 26,

2023, and for her time working from May 26 through her termination on June 2, 2023.  ECF No. 1,

at 5, 7.  Accordingly, she has established a violation of the MWPCL.

### B.    Count II—FLSA

FLSA "requires 'a minimum wage and overtime pay for all covered employees'" for all

hours worked.  *Scott v. Baltimore Cnty.*, 101 F.4th 336, 341 (4th Cir. 2024) (quoting *McFeeley v.*

*Jackson St. Ent., LLC*, 825 F.3d 235, 240 (4th Cir. 2016)); 29 U.S.C. § 206(a)(1).  As with a

MWPCL claim, the Court must first determine whether an employment relationship existed.  *See*

*Falaiye*, 2017 WL 4098740, at *5 (explaining courts apply the same economic-reality test to claims

brought under the FLSA and MWPCL).  For the same reasons described above, the Court

concludes there was such a relationship.  Here too, Plaintiff has sufficiently alleged liability with

respect to unlawfully withheld wages.  Despite working forty hours per week, her paycheck for

the period ending April 28, 2023, was $1,024.56 short of her agreed upon salary, ECF No. 1, at 5,

7, and Plaintiff did not receive any payment for her last month on the job, ECF No. 1, at 5.  Such

practices contravene FLSA's mandate.

### III.    Damages

If the complaint alleges facts sufficient for the Court to find liability, the Court turns to

damages.  *Walsh v. Yost*, No. PX-20-449, 2022 WL 9362277, at *2 (D. Md. Oct. 14, 2022).

Damages are limited to what Plaintiff requests in the Complaint.  Fed. R. Civ. P. 54(c) ("A default

judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). However, "to calculate damages, 'the Court . . . may rely on affidavits or other evidentiary documents in the record.'" *Paige v. CD#15CL2001, Inc.*, No. PWG-15-3691, 2017 WL 193499, at *5 (D. Md. Jan. 18, 2017) (quoting *Quiroz v. Wilhelm Com. Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *2 (D. Md. Nov. 17, 2011)). Although Plaintiff established liability under both the MWCPL and FLSA, she may only recover once. *Gen. Tel. Co. of the Nw. Inc. v. EEOC*, 446 U.S. 318, 333 (1980) ("courts can and should preclude double recovery by an individual). Plaintiff seeks actual damages, enhanced wages, attorney's fees, and costs totaling $68,269.43. ECF No. 18, at 2-5. The Court will award $36,996.75 in damages and $18,939.50 in attorneys' fees and costs, for a total award of $55,936.25.

### A.     Actual Damages

The MWPCL and FLSA both provide for recovery of unpaid wages. 29 U.S.C. § 216(b) (FLSA provision requiring "payment of wages lost"); *Marshall*, 88 A.3d at 739 (explaining that the MWCPL allows employees "to recover the unpaid wages"). Plaintiff has established that she is entitled to $12,332.25 in unpaid wages. ECF No. 18, at 3-4. In her sworn declaration, Plaintiff attests that she "worked 40 hours per week" throughout her employment. ECF No. 18-1, at 2. She was paid on a salaried basis, earning $3,769.23 on a biweekly basis. *Id.* Plaintiff's paycheck for the period ending on April 28, 2023, came up short—Defendants disbursed only $1,024.56 instead of the full amount. *Id.* Defendants then failed to pay Plaintiff's biweekly salary on three more occasions before terminating her employment. *Id.* The sum of Plaintiff's three missed paychecks and the remaining balance of the April 2023 paycheck is $12,332.25.

### B.     Enhanced Damages

Plaintiff also seeks enhanced damages, in the form of treble damages under the MWCPL and double damages under the FLSA.[3]  ECF No. 1, at 7-9; ECF No. 18, at 4.  "In this Court, it is well established that a plaintiff is 'entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both.'"  *Falaiye*, 2017 WL 4098740, at *6 (quoting *Quiroz*, 2011 WL 5826677, at *3).  The customary rule

> in this district [is] to award double damages under the FLSA, but not treble damages under the MWPCL, when the "defendants '[do] not offer any evidence of a bona fide dispute' to make liquidated damages inappropriate, [but the] plaintiffs '[do] not offer any evidence of consequential damages suffered because of the underpayments.

*Id.* (quoting *Villatoro v. CTS & Assocs., Inc.*, No. DKC-14-1978, 2016 WL 2348003, at *3 (D. Md. May 4, 2016)).  Defendants have necessarily not offered evidence of a bona fide dispute by failing to appear.  *See id.*  Plaintiff has not offered evidence of consequential damages because of underpayments—such as a specific financial setback—to support imposition of treble damages. *See Butler v. PP&G, Inc.*, No. JRR-20-3084, 2023 WL 3580374, at *9 (D. Md. May 22, 2023)). Plaintiff's declaration is silent on the effect of the wage underpayments.  *See* ECF No. 18-1. Accordingly, the Court will award double damages pursuant to FLSA: $24,664.50.

### C.    Attorney's Fees

"Prevailing plaintiffs in wage and hour disputes are entitled to recover their attorneys' fees and legal expenses" under the FLSA and MWPCL.  *Velasquez Flores v. Elite Com. Cleaning, LLC*, No. 20-CV-3600, 2024 WL 916250, at *2 (D. Md. Mar. 1, 2024).  The MWPCL provides the Court with discretion to award reasonable attorneys' fees and costs to a prevailing employee.  Md. Code Ann., Lab. & Empl. § 3-507(b).  "To properly calculate an attorney's fees award, courts undertake

---

[3] Plaintiff seeks both avenues in her Complaint but solely mentions the MWPCL in her Motion. *Compare* ECF No. 1, at 7-9 *with* ECF No. 18, at 4.  The Court analyzes both.

a three-step process: (1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs." *Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 21 (4th Cir. 2019) (per curiam). Similarly, plaintiffs may recover costs "for reasonable litigation expenses" that would normally be charged to a fee-paying client subject to a district court's discretion. *Jones v. Dancel*, 792 F.3d 395, 404 (4th Cir. 2015) (quoting *Daly*, 790 F.2d at 1084); 29 U.S.C. § 216(b); *Roy v. Cnty. of Lexington*, 141 F.3d 533, 549 (4th Cir. 1998).

Plaintiff requests $18,939.50 in attorneys' fees and costs. She has provided adequate documentation for her request, including her counsel's affidavit and timesheets outlining his hours, tasks, litigation costs, and total bill. ECF No. 18-3 & 18-4. Plaintiff's counsel's fee of $475 per hour is appropriate because it aligns with the presumptively reasonable hourly rates tied to an attorney's years of experience as Appendix B to this Court's Local Rules specifies. D. Md. Local R. App. B(3) (suggesting a rate of $300-$475 per hour for attorneys who, like Plaintiffs' counsel, have been admitted to the bar for more than twenty years); *Gonzalez v. Caron*, No. 10-CV-2188, 2011 WL 3886979, at *2 (D. Md. Sept. 2, 2011). Review of counsel's records further indicates that the sought-after fees and costs are reasonable; accordingly, the Court awards Plaintiff an additional $18,939.50 in attorneys' fees and costs.

## CONCLUSION

For the aforementioned reasons, Plaintiff's Motion for Default Judgment shall be granted, in part, and denied, in part. The Clerk of the Court shall close the case. The Court awards $36,996.75 in damages and $18,939.50 in attorneys' fees and costs, for a total award of $55,936.25. The Clerk of the Court shall close the case.

So ordered.

Date: November 13, 2024

_____/s/_____

Ajmel A. Quereshi
U.S. Magistrate Judge
